IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

MICHAEL FRANCIS LEE, JR.,                    Civil No. 3:15-cv-01177-PK

            Plaintiff,

                                             OPINION AND ORDER

v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

            Defendant.
_____

PAPAK, Magistrate Judge:

        Plaintiff Michael Francis Lee, Jr. filed this action June 26, 2015, seeking judicial review

of the Commissioner of Social Security's final decision denying his application for Supplemental

Security Income under Title XVI of the Social Security Act. This court has jurisdiction over

plaintiff's action pursuant to 42 U.S.C. § 405(g) and 1383(c)(3).

Page 1 - OPINION AND ORDER

Lee contends that the Appeals Council erred by failing to incorporate additional post-hearing evidence into the administrative record.   Lee argues that by erroneously rejecting medical evidence the Commissioner failed properly to assess his residual functional capacity after completing step three of the five-step sequential process for analyzing a Social Security claimant's entitlement to benefits, and for that reason erred by finding Lee capable of performing work at step five of the process.

I have considered all of the parties' briefs and all of the evidence in the administrative record.   For the reasons set forth below, the Commissioner's decision is reversed and this matter is remanded for the calculation and payment of benefits.

## DISABILITY ANALYSIS FRAMEWORK

To establish disability within the meaning of the Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner has established a five-step sequential process for determining whether a claimant has made the requisite demonstration. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. § 416.920(a)(4). At the first four steps of the process, the burden of proof is on the claimant; only at the fifth and final step does the burden of proof shift to the Commissioner. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the Administrative Law Judge considers the claimant's work activity, if any. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. § 416.920(a)(4)(I).  If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant will be found not disabled.

Page 2 - OPINION AND ORDER

*See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§ 416.920(a)(4)(I), 416.920(b). Otherwise, the evaluation will proceed to the second step.

At the second step, the ALJ considers the medical severity of the claimant's impairments. *See Bowen*, 482 U.S. at 140-141; *see also* 20 C.F.R. § 416,920(a)(4)(ii). An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities and is expected to persist for a period of twelve months or longer. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. § 416.920(c). The ability to perform basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b); *see also Bowen*, 482 U.S. at 141. If the ALJ finds that the claimant's impairments are not severe or do not meet the duration requirement, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(ii), 416.920(c). Nevertheless, it is well established that "the step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996), *citing Bowen*, 482 U.S. at 153-154. "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work." *Id.*, *quoting* S.S.R. 85-28, 1985 SSR LEXIS 19 (1985).

If the claimant's impairments are severe, the evaluation will proceed to the third step, at which the ALJ determines whether the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d). If the claimant's impairments are equivalent to one of the impairments enumerated

Page 3 - OPINION AND ORDER

in 20 C.F.R. § 404, subpt. P, app. 1, the claimant will conclusively be found disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(iii), 416920(d).

If the claimant's impairments are not equivalent to one of the enumerated impairments, between the third and the fourth steps the ALJ is required to assess the claimant's residual functional capacity ("RFC"), based on all the relevant medical and other evidence in the claimant's case record. *See* 20 C.F.R. § 416.920(e). The RFC is an estimate of the claimant's capacity to perform sustained, work-related physical and/or mental activities on a regular and continuing basis,[1] despite the limitations imposed by the claimant's impairments. *See* 20 C.F.R. § 416.945(a); *see also* S.S.R. No. 96-8p, 1996 SSR LEXIS 5 (July 2, 1996).

At the fourth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's past relevant work. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(iv). If, in light of the claimant's RFC, the ALJ determines that the claimant can still perform his or her past relevant work, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f). In the event the claimant is no longer capable of performing his or her past relevant work, the evaluation will proceed to the fifth and final step, at which the burden of proof shifts, for the first time, to the Commissioner.

At the fifth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's age, education, and work experience to determine whether a person with those characteristics and RFC could perform any jobs that exist in significant numbers in the national economy. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g),

---

[1] "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." S.S.R. No. 96-8p, 1996 SSR LEXIS 5 (July 2, 1996).

416.960(c), 416.966. If the Commissioner meets her burden to demonstrate the existence in significant numbers in the national economy of jobs capable of being performed by a person with the RFC assessed by the ALJ between the third and fourth steps of the five-step process, the claimant is found not to be disabled. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g), 416.960(c), 416.966. A claimant will be found entitled to benefits if the Commissioner fails to meet that burden at the fifth step. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g).

## LEGAL STANDARD

A reviewing court must affirm an Administrative Law Judge's decision if the ALJ applied proper legal standards and his or her findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007), *citing Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).

The court must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.*, *quoting Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The court may not substitute its judgment for that of the Commissioner. *See id.*, *citing Robbins*, 466 F.3d at 882; *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Moreover, the court may not rely upon its own independent findings of fact in determining whether the ALJ's findings are supported by substantial evidence of record. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003), *citing SEC v. Chenery*

*Corp.*, 332 U.S. 194, 196 (1947). If the ALJ's interpretation of the evidence is rational, it is immaterial that the evidence may be "susceptible [of] more than one rational interpretation." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), *citing Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).

## SUMMARY OF ADMINISTRATIVE RECORD[2]

Lee was 52 years old on September 3, 2013, the date of the hearing. Tr. 41.[3] He completed a GED. Prior to his claimed disability onset date Lee had substantial gainful employment as a automobile lubrication technician and floor cover installer. Tr. 43.

### I. The Medical Record

The medical record is extensive and the parties are familiar with it. Accordingly, it will be set out below when relevant.

### II. The Hearing Testimony

On September 3, 2013, a hearing was conducted before an ALJ in connection with Lee's application. Tr. 35-74. Lee, his counsel, and a vocational expert were present. Tr. 35.

Lee testified that he is divorced and lives with his mother. Tr. 41. He left school in ninth grade because school could not hold his attention. Tr. 43. He has no income and last worked as an automobile lubrication technician in February 2010. Lee has inquired about working at a gas station but was told he could not be hired due to his seizure disorder. Tr. 42. Lee's last job ended when a seizure caused him to have a major automobile accident.

---

[2] The following recitation constitutes a summary of the evidence contained within the Administrative Record, and does not reflect any independent finding of fact by the court.

[3] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed herein as Docket No. 8.

Lee was self-employed and worked for his brother installing floor coverings until about 2005 when he was in a motor vehicle accident and required back surgery. Tr. 43.

Lee testified he spends most of his time in his room because his medications make him sleepy. Tr. 45. He is afraid to go anywhere because he has had seizures in public. He has tried several medications to control seizures, and was currently taking Tegretol. Lee has both grand mal and petite mal seizures. After a grand mal seizure he will sleep for ten hours. Tr. 61. Lee estimated he had ten seizures since 2010. Tr. 62. He had a grand mal seizure on May 28, 2013, became unconscious, and was not found for about eight hours. Tr. 46. Thereafter, Lee was hospitalized for a month during which he underwent a fasciotomy and was diagnosed with compartment syndrome of his dominant left arm as well as kidney failure. He has no feeling in his left arm, hand or shoulder. His doctor has recommended they amputate the arm at the elbow. Tr. 49.

Lee had surgery in 2004 for a herniated disc and has increasing bilateral leg pain. Tr. 50. Sometimes the pain is so bad pain medication does not help. Lee can sit for 30 to 45 minutes before he needs to change position. Physical therapy has not helped. He can walk about five blocks before requiring rest, and sometimes uses a cane. Tr. 52. Lee cannot drive due to his seizure disorder.

Lee was able to work through his back pain at the automotive shop because he took 200 milligrams of time release morphine in the morning and four 30 milligram instant release morphine tablets throughout the day. Tr. 53. His former boss at the automotive shop would hire him back but for the seizure disorder.

Lee had surgery for a right rotator cuff tear with residual pain. Tr. 54. On waking, two fingers and his thumb are numb. Tr. 55. He has hip pain, right greater than left. Tr. 56. Lee has depression and anxiety for which he takes Zoloft.

A home health aide comes to Lee's home three days a week, three hours a day, since he hurt his arm in May 2013. Tr. 56-57. The aide does Lee's laundry, makes his bed, helps him shower, and takes him to appointments. Lee has virtually no social activities. His mother makes his food and opens bottles. Tr. 60.

On September 13, 2013, the ALJ issued a decision finding Plaintiff not disabled. Tr. 11-34. Lee requested review of the ALJ's decision, Tr. 8-10, and the Appeals Council denied his request on May 8, 2015. Tr. 1-7. In consequence, the ALJ's decision became the Administration's final order for purposes of judicial review. *See* 20 C.F.R. § 422.210(a); *see also, e.g., Sims v. Apfel*, 530 U.S. 103, 107 (2000). This action followed.

## SUMMARY OF ALJ FINDINGS

At the first step of the five-step sequential evaluation process, the Administrative Law Judge found that Lee did not engage in substantial gainful activity at any time following his claimed disability onset date of February 11, 2010. Tr. 16.

At the second step, the ALJ found that Lee's impairments of opiate dependence, left upper extremity pain status post compartment syndrome and fasciotomy, chronic pain syndrome, back pain, left knee pain, seizure disorder, right shoulder degenerative joint disease status post rotator cuff injury, depression, and anxiety, were "severe" for purposes of the Act. *Id.* Because an impairment was deemed severe, the ALJ proceeded to the third step of the analysis.

At the third step, the ALJ found that none of Lee's impairments were the equivalent of any of the impairments enumerated in 20 C.F.R. § 404, subpt P, app. 1. Tr. 21. The ALJ therefore properly conducted an assessment of Lee's residual functional capacity. Specifically, the ALJ found between February 11, 2010 and May 28, 2013, Lee had the capacity to perform light work, except he could stand and walk for four hours and sit for four hours in an eight hour workday. Tr. 18. He must be allowed to sit or stand alternately at 45 minute intervals, for two to five minutes, during which period he could remain on task. He could occasionally use ramps and stairs, bend, balance, stoop, kneel, and crouch. He could never climb ladders, ropes, or scaffolds, or crawl. He must avoid all exposure to hazards, such as dangerous machinery and unsecured heights. He could perform work tasks that do not involve operation of a motor vehicle. He was fully capable of learning, remembering, and performing simple, routine, and repetitive work tasks involving simple work instructions, performed at a routine and predictable pace. He could have occasional contact with the public and can frequently stoop or crouch. Tr. 19.

The ALJ found that beginning May 28, 2013, Lee had the same residual functional capacity with the additional limitation of having no use of the dominant left upper extremity. *Id.*

At the fourth step of the five-step process, the ALJ found Lee was unable to return to past relevant work as a lubrication technician and floor installer. Tr. 27. The ALJ relied on the testimony of a Vocational Expert (VE) that an individual with the RFC set out above could perform other work, including laundry folder, price marker, and paper sorter-recycler. Tr. 28. On that basis, the ALJ concluded Lee was not disabled as defined in the Act at any time between July 18, 2011, and September 13, 2013. *Id.*

ANALYSIS

Lee contends the Appeals Council improperly refused to consider relevant medical records arising after the hearing before the ALJ, and the that ALJ improperly weighed the medical evidence.

## I. New Evidence and the Appeals Council

Lee submitted new evidence to the Appeals Council, including a form completed by treating physician Daniel Stroud, M.D., on August 29, 2013. Tr. 1331-1135. Dr. Stroud opined that Lee could lift and carry no weight, could stand or walk for 15 minutes at a time, could stand or walk for a total of one hour in an eight hour work day, could sit for 30 minutes at a time and a total of one hour in an eight hour work day. Dr. Stroud stated Plaintiff required the ability to change position frequently, and had sedation as a medication side effect. Dr. Stroud opined that Lee's concentration, persistence, and pace were extremely impaired by his conditions and medications. Tr. 1333. Dr. Stroud said Lee would be too impaired to perform even simple work tasks, and would likely miss two or more workdays a month from even a simple and routine sedentary job. Tr. 1334.

The Appeals Council considered some of the new evidence but rejected evidence dated after the ALJ's September 13, 2013 decision. The Appeals Council determined the evidence it did review did not provide a basis for changing the ALJ's decision. Tr. 2.

This court may consider the new evidence, including Dr. Stroud's opinion, to determine whether, in light of the record as a whole, the ALJ's decision is supported by substantial evidence and is free of legal error. *Ramirez v. Shalala*, 8 F.3d 1449, 1451-54 (9th Cir. 1993); *Taylor v.*

*Comm'r of Soc. Sec.*, 659 F.3d 1228, 1233 (9th Cir. 2011); *Brewes v. Comm'r of Soc. Sec.*, 682 F.3d 1157, 1159-60 (9th Cir. 2012).

## II. The Medical Evidence

Disability opinions are reserved for the Commissioner.  20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1).  If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual.  *Orn v. Astrue,* 495 F.3d 625, 632 (9th Cir. 2007).  In such circumstances the ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician.  *Id.*  If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons.  *Id.* (Treating physician); *Widmark v. Barnhart,* 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician). Even if one physician is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn,* 495 F.3d at 632; *Widmark,* 454 F.3d at 1066.  The opinion of an non-examining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician.  *Widmark,* 454 F.3d at 1066 n. 2.  The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart,* 427 F.3d 1211, 1217 (9th Cir. 2005).

The ALJ cited Dr. Stroud's opinion, and noted that it was based on a three month long treating relationship.  Tr. 26.  The ALJ found Dr. Stroud's opinion "not supported by the

longitudinal record," inconsistent with examining and reviewing physicians, and gave it "limited weight." *Id.*

## A. Length of the Treating Relationship

The ALJ noted that Dr. Stroud's opinion was offered in August 2013 after he treated Plaintiff for about three months, from May 22 to July 2013.    Tr. 1309, 1306-07, 1304-05, 1303. Dr. Stroud treated Plaintiff at Pearl Health Center, P.C., the same clinic at which Plaintiff received treatment since at least June 2012. Tr. 1330. Dr. Stroud had access to Plaintiff's medical records, and the brevity of the treating relationship is not a specific, legitimate, clear or convincing reason to discredit Dr. Stroud's opinion.

## B. Longitudinal Record

The ALJ determined that the longitudinal record did not support Dr. Stroud's opinion. Tr. 26.  A medical opinion may be rejected when it is "unsupported by the record as a whole." *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1195 (9th Cir. 2004).    The Commissioner argues that Dr. Stroud's assessment of limitations in standing, walking, and sitting are apparently attributed to back pain, but that Dr. Stroud's findings were benign and he mostly recorded Plaintiff's subjective complaints.  Dr. Stroud, however, noted complaints of increasing chronic back and leg pain with a history of surgical laminectomy at L3-5 for spinal stenosis, a small disc bulge at L4-5, and tenderness to palpation of the lumbar spine.  Tr. 1309.

An ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations. *Edlund,* 253 F.3d at 1159, *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1199 (9th Cir. 2008).

Dr. Stroud clearly relied upon his own observations to reach his opinion and he did not discredit

Plaintiff's complaints.    Therefore, the ALJ erred by rejecting Dr. Stroud's opinion based on

Lee's lack of credibility.

### (1) Todd Kuether, M.D.

The ALJ cited the April 2012 neurological examination by Todd Kuether, M.D.  Tr. 23-

24.  Dr. Kuether noted Plaintiff's history of lumbar laminectomy "with back pain since that

surgery to the point that he needed to change jobs and was doing more of a managerial type job.

He then was in a serious car accident in 2010 and has had significant progressive problems with

back pain and leg problems since that time. . . in an L4-L5-S1 type distribution." Tr. 811. Dr.

Kuether stated x-rays demonstrated a spondylolisthesis at L3-4.  Plaintiff was taking oxycodone,

Tegretol, and Ativan.  Neurological examination was normal with decreased sensation in a left

L4 distribution, and hypoactive deep tendon reflexes.  Tr. 813.  Dr. Kuether ordered an MRI,

which showed "some degenerative changes that are relatively mild at the L3-4, L4-5 level.. . .

there appears to be a fairly prominent Schmorl's node noted at the L4-5 level which in some

cases can lead to back pain issues. . . he does have what appears to be a right-sided intraforaminal

far lateral disk protrusion which would be affecting mainly the right L3 nerve roots." Tr. 809.

Dr. Kuether stated the MRI "really does not look too bad, " and as to Plaintiff's low back pain,

"[i]t is very hard to know where this might be coming from." *Id.*  Dr. Kuether concluded there

were no surgical solutions and recommended continued pain management.

The ALJ stated that "[a]s described by Dr. Kuether, the degenerative changes to the

claimant's lumbar spine do not appear to be so severe as to preclude him from all work activity."

Tr. 24.  Plaintiff does not, however, contend that back pain alone causes his disability.  Dr.

Kuether cannot identify the source of Plaintiff's back pain, and can offer no surgical solution, but he does not conclude that Plaintiff has no back pain. Dr. Kuether's opinion does not contradict Dr. Stroud.

### (2) Scott T. Alvord, Psy.D.

Dr. Alvord conducted a mental status examination and clinical interview of Plaintiff in July 2011. Tr. 720-24. Plaintiff described chronic back and shoulder pain, seizures, and anxiety. Tr. 721. He had very limited functioning due to pain, fear of seizures, limited motivation, social isolation, and limited range of motion. Dr. Alvord found Plaintiff's ability to care for himself moderately limited, his ability to follow instruction mildly to moderately limited, and his ability to concentrate, persist and pace moderately impaired. Tr. 722. Dr. Alvord concluded Plaintiff was not capable of independently managing his finances. Psychomotor movements were globally slowed, and abstract thinking was impaired. Dr. Alvord's diagnostic impressions were depressive disorder secondary to epilepsy, anxiety disorder not otherwise specified, rule out major depressive disorder recurrent (moderate), polysubstance dependence (patient reports in full sustained remission), and he assessed a GAF or 45-50. Tr. 724.

The ALJ said that Dr. Alvord's assessment does not support Plaintiff's allegations of disability. Tr. 24. The ALJ found Plaintiff's seizures were better controlled than Dr. Alvord believed. The ALJ noted that at the time of Dr. Alvord's assessment, Plaintiff was not taking any psychiatric medication, and concluded this was evidence that Plaintiff's mental impairments are not so severe as to be disabling. Dr. Alvord, however, found Plaintiff unable to manage his own finances, and "in need" of psychiatric treatment, with an GAF score indicating severe

impairment. Tr. 724. Dr. Alvord's opinion about Plaintiff's mental health functioning supports Dr. Stroud's opinion.

### (3) Bassel Beitinjaneh, M.D.

Dr. Beitinjaneh examined Plaintiff on November 2, 2010. Tr. 596-600. Plaintiff's main complaints were seizures and back and hip pain. Dr. Beitinjaneh concluded Plaintiff was able to stand and walk up to four hours in an eight hour day due to back pain, and sit up to four hours per day due to back pain. Tr. 600. He could lift and carry 20 pounds occasionally and ten pounds frequently. He could not work at heights and should avoid working with heavy machinery.

The ALJ gave Dr. Beitinjaneh's opinion "significant weight." Tr. 25. Dr. Beitinjaneh's opinion, however, was offered well before Plaintiff's May 2013 seizure and resulting injury to his dominant left extremity. To the extent that Dr. Beitinjaneh's physical assessment was accurate in November 2010, it was certainly not accurate at the time of the September 2013 hearing. The ALJ reliance on Dr. Beitinjaneh's opinion is not a clear and convincing or specific and legitimate reason to reject Dr. Stroud's opinion.

### (4) Karen Bates-Smith, Ph.D.

Dr. Bates-Smith conducted a psychological evaluation of Plaintiff on November 3, 2010. Tr. 601-05. She reviewed limited medical records, conducted a clinical interview, and administered the 21-Item Test. Plaintiff's chief complaint was epilepsy, and he reported multiple seizures which left him very tired. Plaintiff had back pain, right shoulder pain from a torn rotator cuff, left hip pain, and depression increased since his February 2010 motor vehicle accident. His sleep cycle was reversed, appetite significantly increased, he isolated himself, and had low energy and poor concentration.

Page 15 - OPINION AND ORDER

Plaintiff admitted to lengthy polysubstance abuse, and two prior psychiatric hospitalizations. He had multiple convictions, mowed the lawn, and cared for 12 cats. Dr. Bates-Smith diagnosed major depressive disorder, recurrent, moderate; alcohol, cannabis, amphetamine, and hallucinogen abuse, in full sustained remission. Tr. 604.

The ALJ found Dr. Bates-Smith's assessment "does not support the claimant's allegations of disability." Tr. 24. The ALJ noted Plaintiff was taking Citalopram and Lorazepam, concluding his mental impairments were treatable and not disabling.

The ALJ examines each of Plaintiff's physical and mental conditions and asks whether each condition is disabling. This is error as the question is whether all of Plaintiff's conditions, considered together, are disabling. *Lester v. Chater,* 81 F.3d 821 (9th Cir. 1995).

The ALJ failed to identify clear and convincing, or specific and legitimate, reasons to reject the opinion of the treating physician. The ALJ erred in rejecting Dr. Stroud's opinion and the ALJ's decision is not supported by substantial evidence.

## REMAND

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel,* 211 F.3d 172, 1178 (9th Cir. 2000), *cert. denied,* 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r,* 635 F.3d 1135, 1138-39 (9th Cir. 2011)(quoting *Benecke v. Barnhart,* 379 F.3d 587, 593 (9th Cir. 2004)). The court

Page 16 - OPINION AND ORDER

may not award benefits punitively, and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett,* 340 F.3d at 876 (citing *Bunnell v. Sullivan,* 947 F.2d 871 (9th Cir. 2003)(en banc)). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue,* 623 F.3d 1032, 1035 (9th Cir. 2010).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Page 17 - OPINION AND ORDER

The ALJ's failure to credit the opinion of the treating physician is erroneous for the reasons set out above. The Vocational Expert testified that, if Dr. Stroud's opinion is credited, Lee would be unable to maintain employment. Tr. 73. On this record, Plaintiff's May 28, 2013 seizure is the onset date of Plaintiff's disability.

If credited, that opinion establishes that Plaintiff is disabled. Thus, the Court concludes Plaintiff is disabled based on this medical record and no useful purpose would be served by a remand of this matter for further proceedings. *See Harman,* 211 F.3d at 117.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter to the Commissioner pursuant to Sentence Four, 42 U.S.C. § 405(g) for the immediate calculation and payment of benefits to Plaintiff.

IT IS SO ORDERED.

DATED this 20th day of June, 2016.

Honorable Paul Papak
United States Magistrate Judge

Page 18 - OPINION AND ORDER